IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DONALD McCISKILL,
    Plaintiff,

vs.                                         Case No.: 3:09cv298/MCR/EMT

ROCKY SMITH,
    Defendant.
_____/

## ORDER and REPORT AND RECOMMENDATION

    Plaintiff, proceeding pro se and in forma pauperis, commenced this case on July 13, 2009,[1] by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 (doc. 1). The court entered an order directing that Defendant Rocky Smith be served on April 14, 2010 (doc. 10). After some difficulty, the Defendant was located, and he waived service of process (*see* docs. 14, 15, 20–22, 24, 25, 27, 29–32). Defendant filed an answer to the complaint and a motion for leave to file a motion for summary judgment on March 4, 2011 (docs. 39, 40). Leave to file the motion for summary judgment was granted, and the motion which is now at issue was filed at docket number 42. The court allowed limited discovery (*see* doc. 50), and thereafter Plaintiff filed a response to Defendant's motion for summary judgment, as well as a supporting memorandum of law (docs. 51, 52).

I.    BACKGROUND AND PROCEDURAL HISTORY

    This case originates from an incident that took place at Santa Rosa Correctional Institution ("SRCI") between Plaintiff and another inmate in November of 2006 (*see* doc. 1). Plaintiff sues Officer Rocky Smith, claiming that Smith placed inmate Henry Primous into Plaintiff's cell in deliberate indifference to Plaintiff's expressed fear of this inmate, and that Smith failed to respond

---

[1] Plaintiff did not include a date on the complaint, and the postmark on the envelope is illegible. Therefore, the court considers the case filed on the date it was received by the clerk, rather than applying the prison mailbox rule.

to Plaintiff's complaints about Primous' behavior after this placement which culminated in a fairly serious attack on Plaintiff by inmate Primous on November 27, 2006 (*id.*). Plaintiff contends that Officer Smith's actions were in violation of his Eighth Amendment right to be free from cruel and unusual punishment (*id.* at 7). Attachments to the complaint reveal that Plaintiff filed an informal grievance about the incident in January of 2007, and, having received no response, filed another informal grievance on February 11, 2007 (*id.* at 8). The second grievance was denied as untimely (*id.*). Plaintiff appealed, and he was informed that his complaint would be referred to the Office of the Inspector General ("OIG") (*id*. at 9–10). He subsequently filed an appeal to the Secretary inquiring about the lack of timely response from the OIG and was told that his correspondence should be directed to that office (*id.* at 11–12). No information in the record suggests how or whether the investigation concluded. In the instant complaint, Plaintiff seeks compensatory, emotional, and punitive damages in the amount of $1,000,000.00, as well as attorneys' fees totaling $50,000.00 (*id.* at 7).

In his motion for summary judgment, Defendant argues he is entitled to summary judgment because the evidence shows that he was unaware of any complaints or concerns expressed by Plaintiff about Primous either before or after his placement in Plaintiff's cell, and thus he had no subjective knowledge of any risk of harm (doc. 42 at 7). Defendant also notes that there is no evidence that Plaintiff made any effort to avail himself of the grievance procedure about Primous' alleged behavior before it escalated to the assault on November 27, 2006 (*id.*). Defendant further argues that he is not liable under either a theory of respondeat superior or vicarious liability, and finally, that he is entitled to qualified immunity because no constitutional violation occurred (*id.* at 11–14). Defendant has submitted affidavits and other evidence in support of his motion (docs. 42-1–42-8). In the court's order directing Plaintiff to respond to the motion, it advised him of his burden in responding to Defendant's motion and advised him with respect to the filing of evidentiary materials (doc. 41). Plaintiff has filed a response to the motion, a memorandum of law, and numerous declarations in support of his position (docs. 51, 52).[2] His complaint, which was filed

---

[2] Plaintiff's response to Defendant's motion references a number of exhibits which the court has determined were docketed as attachments to his motion for an order compelling discovery instead of the response (doc. 53 at 5–13). The clerk will be directed to copy these items and attach them to Plaintiff's response to the motion for summary

under penalty of perjury, also carries evidentiary weight. *See* Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980) (statements within a verified complaint made within personal knowledge might raise sufficient genuine issues of material fact to foreclose summary judgment).[3]

## II.    MATERIAL FACTS

As this case comes before the court on Defendant's motion for summary judgment, the court views the facts in the light most favorable to Plaintiff, the non-moving party, *see* Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993), drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. *See* Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997). The court conveys only those facts that are material.

With regard to the factual positions asserted by the parties, the court applies the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> . . . .
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

---

judgment, filed on the same date (doc. 51). To avoid confusion, henceforth, references to Plaintiff's submissions will refer to the exhibits as attachments to his response, document 51.

[3] All cases from the former Fifth Circuit handed down by the close of business on September 30, 1981, are binding on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Fed. R. Civ. P. 56(c) (2010). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment, or grant summary judgment if Defendant's motion and supporting materials—including the facts considered undisputed—show that Defendant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2, 3) (2010).

Finally, any facts included in Defendant's statement of material facts that are not controverted in Plaintiff's response are deemed admitted. *See* N.D. Fla. Loc. R. 56.1(A) (all material facts set forth in moving party's statement of undisputed material facts will be deemed admitted unless controverted by statement required to be filed and served by opposing party).

The parties present two widely divergent sets of facts in their submissions. Thus, each party's position will be set forth before the court identifies the few facts on which there is agreement.

Plaintiff states that "on or about November 19, 2006," Sergeant[4] Rocky Smith informed him that inmate Henry Primous would be moved into the cell with Plaintiff (doc. 1 at 5; doc. 51, exh. A at 1). At this time, Plaintiff believed that inmate Primous was getting out of disciplinary confinement after an assault on his previous cellmate (doc. 51, exh. A at 1). According to Plaintiff, Primous had been recommended for segregation (i.e., placement in single cell housing) because of his violence against other inmates (*id.*). Plaintiff told Sgt. Smith that Primous had threatened Plaintiff with physical harm on several occasions and that he was afraid of Primous, and he asked that Primous not be placed in Plaintiff's cell (*id.*). There was a vast difference in size between the two men—Plaintiff was 5 feet 2 inches tall and weighed around 128 pounds, while Plaintiff describes that Primous was 6 feet 6 inches tall and weighed about 225 pounds (doc. 51, exh. B at 2).[5] Plaintiff states that Sgt. Smith disregarded Plaintiff's concerns and placed inmate Primous in

---

[4] Plaintiff's complaint identifies Smith as "Officer." The court will use Defendant's correct title of "Sergeant."

[5] While, for summary judgment purposes the court accepts as true Plaintiff's version of the facts, the court notes that Plaintiff's description of Primous appears to be slightly exaggerated. Department of Corrections records indicate that at the time of his release in November of 2011, Henry Primous was 6 feet and 1 inch tall, and weighed 195 pounds. *See* http://www.dc.state.fl.us/InmateReleases/detail.asp?Bookmark=1&From=list&SessionID=1072411404. Still, Primous is nearly a foot taller than Plaintiff.

Case No.: 3:09cv298/MCR/EMT

his cell (doc. 1 at 5; doc. 51, exh. A at 1).[6] Plaintiff asserts that from the first day Primous was in his cell, Primous slapped him around and took his food trays (*id*.; doc. 51 exh. B at 1). Primous also made Plaintiff ask for "permission" before doing things like using the bathroom, getting up to get his food tray, or even talking, and that if he failed to do so, Primous would "open hand slap" Plaintiff as hard as he could (doc. 51, exh. B at 1). Additionally, Primous searched through Plaintiff's belonging for requests and informal grievances Plaintiff wrote about Primous' abuse and destroyed the documents, so they were never sent out (*id.*). Plaintiff states he complained to Sgt. Smith about his cellmate's conduct, but his complaints were unavailing (doc. 1 at 5; doc. 51, exh. A at 1–2).[7] In fact, Plaintiff asserts that Sgt. Smith laughed about Plaintiff's complaints, told Plaintiff he was getting what he deserved, and refused Plaintiff's requests to be moved to a different cell (doc. 51, exh. A at 1–2). Other officers also declined Plaintiff's requests to be relocated, telling him that any such move would need Sgt. Smith's approval (*id.* at 2). On November 27, 2006, Primous beat Plaintiff so severely that he needed stitches on the left side of his face and right ear, and he had to be placed in the infirmary for two or three days (*id.*). According to Plaintiff, the beating was precipitated by Primous asking Plaintiff "what he was in for" and Primous' apparently mistaken belief that Plaintiff had molested a child (doc. 51, exh. C at 1).[8]

When Plaintiff was released from the infirmary, he was placed in a cell across from Primous (doc. 51, exh. D at 1). Plaintiff states he overheard Primous make statements to another inmate regarding Sgt. Smith's motive for placing Primous in Plaintiff's cell, Smith's actions toward Primous following the attack, and Smith's statements to Primous following the attack (*id.*).[9] Plaintiff

---

[6] Plaintiff has submitted the declarations of two other inmates who confirmed that it was Sgt. Smith who placed Primous into the cell occupied by Plaintiff (doc. 51, exhs. E, F).

[7] More specifically, Plaintiff told Sgt. Smith that he had been "slapped around" by Primous and that Primous had taken his food trays (doc. 1 at 5; doc. 51, exh. A at 1).

[8] As discussed *infra*, Primous offers a different reason for the attack on Plaintiff. According to Primous, when he woke up on the morning of November 27, 2006, Plaintiff was sexually assaulting him by fondling him in the groin area, so he "defended [him]self by striking" Plaintiff (doc. 42, exh. C, Declaration of Hernry Primous). Plaintiff denies having fondled Primous before the attack (doc. 51, exh. B at 2).

[9] Primous' alleged statements to the other inmate (i.e., that Sgt. Smith placed Primous in Plaintiff's cell to assault Plaintiff in retaliation for Plaintiff having assaulted a corrections officer with a lock in a sock, and that Primous was "paid" three packs of cigarettes and advised by Smith to tell staff he had beaten Plaintiff up because Plaintiff had

maintains that he confronted Sgt. Smith about what he overheard, and Smith just laughed and walked away (doc. 51, exh. D at 1). When Plaintiff told Smith he was going to sue him, Smith allegedly told Plaintiff "good luck on finding me, I'm retiring" (*id.*).[10]

Plaintiff asserts that after this traumatic event, he sought psychological treatment and was diagnosed with post-traumatic stress disorder (doc. 51, exh. A at 2). He now requires psychotropic medication (*id.*).

The facts presented by Defendant are as follows. Prison records reflect that Primous was assigned to the same cell as Plaintiff on November 17, 2006[11] (doc. 42, exh. A, Declaration of Rocky Smith), and that from November 17 through November 27, 2006, Plaintiff and inmate Primous were both assigned to cell D-2113 at SRCI (*id.*, exh. B, Affidavit of Bradford Locke). They were both Close Management Level II ("CM II") inmates (*id.*). In accordance with the Florida Administrative Code, inmates on CM II status are not required to be restricted to single cell housing. (*See* Rule 33-601.800(2)(b), F.A.C.). Smith does not recall whether he was the person who placed Primous and Plaintiff in the same cell (doc. 42, exh. A at 1).

During the ten-day period in which Plaintiff and Primous were housed together, Smith had no knowledge of any complaints by Plaintiff about his cell arrangement with Primous (doc. 42, exh. A at 1, Smith declaration). Smith states in his declaration that if he had been made aware of Plaintiff's claim that Primous was a threat to him or that Primous had slapped Plaintiff or taken his

---

fondled him (*see* doc. 51, exh. D at 1)) constitute hearsay and therefore may not be considered for summary judgment purposes. Fed. R. Civ. P. 56(c)(4). Notwithstanding, the undersigned notes that although Plaintiff outlines Primous' alleged statements to the other inmate in a declaration sworn under penalty of perjury, Plaintiff did not report the alleged statements in the series of grievances he wrote, which complain only that Smith put him in harm's way by placing an inmate Plaintiff feared in the cell with him (doc. 1 at 8, 9). Plaintiff did not allege that Smith intended for Plaintiff to be assaulted in retaliation for Plaintiff's attack on a corrections officer.

[10] Plaintiff notes that Smith did in fact retire, and the first case he filed against Smith had to be dismissed because he was unable to serve him (doc. 51, exh. D at 1–2). It was only with the help of a friend on the outside that he was able to find a valid address for service and thus re-filed his case (*id.* at 2).

[11] Defendant Smith states that he was not on duty on November 19, 2006, the approximate date Plaintiff suggested that inmate Primous was moved into his cell (doc. 42, exh. A, Smith declaration). In any event, Plaintiff's complaint alleges that Primous was moved into his cell "on or about November 19," and he admits in his response to the motion for summary judgment that he is not sure of the exact date (doc. 51 at 1). The court also observes that Smith's "declaration" is presumably labeled as such because it was not sworn in front of a notary. However, he does declare the truth of the matters contained therein under penalty of perjury (doc. 42, exh. A, Smith declaration at 2).

Case No.: 3:09cv298/MCR/EMT

food trays, he would have placed the two inmates in separate cells and either had an incident report written or written one himself (*id.* at 1–2).  He further states that he would have done this because he has "never failed to take measures within [his] control to safely prevent or stop inmate on inmate violence or the valid threat of violence" (*id.* at 2).  Inmate Primous has also submitted a declaration in which he states that during the time he was housed with Plaintiff, he did not steal Plaintiff's food trays, or hit or slap him, except, presumably, to defend himself on the date of the incident at issue (doc. 42, exh. C, Declaration of Henry Primous).  Primous further asserts that he did not hear Plaintiff complain about him to staff (*id.*).  Defendant notes that there is no evidence that Plaintiff filed any grievances about his cellmate or about Sgt. Smith during the time period in question (doc. 42, exh. E, Affidavit of Bernadette Pierce).

Primous states in his declaration that in the early morning hours of November 27, 2006, he awoke to find McCiskill fondling him in his groin area and struck him (doc. 42, exh. C, Primous declaration; *see also* exh. F, Affidavit of Gwendolyn Lewis ).  Plaintiff denies fondling Primous (doc. 42, exh. F, Lewis affidavit).  There is nothing in the record to suggest whether Primous was disciplined as a result of the incident.

Clearly, then, the parties agree on very little.  Essentially, they agree that Plaintiff and inmate Henry Primous were both CM II inmates at the time they were placed in the same cell on November 17, 2006, and that the men were housed together until November 27, 2006.  They also agree that Plaintiff filed no written grievances during this time.  Finally, they concur that on November 27, 2006, Plaintiff suffered a serious injury at the hands of his cellmate.  The disagreement surfaces with respect to whether Plaintiff reported to Sgt. Smith, prior to Primous' placement in Plaintiff's cell, that Primous had threatened Plaintiff with physical harm on several occasions and that Plaintiff was afraid of Primous, and whether Plaintiff requested of Sgt. Smith that he not place Primous in his cell. Likewise, a dispute exists as to whether Plaintiff complained to Sgt. Smith, prior to Primous' attack but during the time the men were housed together, that Primous was engaging in abusive conduct, such that Sgt. Smith could have intervened and separated the two men, thus preventing the attack.

III.    LEGAL STANDARDS

    A.    <u>Summary Judgment Standard</u>

In order to prevail on his motion for summary judgment, Defendant must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). If Defendant successfully negates an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324. Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him. *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, Plaintiff still bears the burden of coming forward with sufficient evidence of every element that he must prove. *See* Celotex Corp., 477 U.S. at 317. A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

B.     Failure to Protect

A claim that a corrections official failed to protect an inmate from violence at the hands of another inmate arises under the Eighth Amendment. In order to state a claim for a violation of his right to be free from cruel and unusual punishment, "there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting Wright v. El Paso County Jail, 642 F.2d 134, 136 (5th Cir. 1981)). "An official's deliberate indifference to a known danger violates an inmate's Eighth Amendment rights." McCoy v. Webster, 47 F.3d 404, 407 (11th Cir. 1995). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted); Rodriguez v. Secretary for the Dept. Of Corrections, 508 F.3d 611, 616–17 (11th Cir. 2007); Purcell ex. Rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1319 (11th Cir. 2005); Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for the prison officials responsible for the victim's safety. Farmer, 511 U.S. at 834; Purcell; Galloway, *supra*. To be held liable under the Eighth Amendment for failing to prevent an attack from other inmates, a correctional official must be found to have known of and recklessly disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Purcell, 400 F.3d at 1319–20 (plaintiff must "produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.") (citation omitted); Rodriguez, *supra*. When officials become aware of threats to an inmate's health and safety, the Eighth Amendment proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. McCoy, 47 F.3d at 407; Marsh v. Butler County, Alabama, 268 F.3d 1014, 1027 (11th Cir. 2001).

It is not appropriate to use hindsight to determine whether conditions of confinement amounted to "cruel and unusual" punishment. Purcell, 400 F.3d at 1320 (citing Brown v. Hughes,

894 F.2d 1533, 1537 (11th Cir. 1990)).  Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer.  Farmer, 511 U.S. at 841.  The risk of attack must have been substantial, beyond mere possibility.  Brown v. Hughes, 894 F.2d at 1537.  Absent special circumstances, general hostilities exhibited by prisoners do not alone amount to a "substantial risk of serious harm."  See Galloway, 352 F.3d at 1349 (mere awareness of inmate's "generally problematic nature" insufficient);[12] Brown, 894 F.2d at 1537 (declining to hold liable defendants who had been informed of "racial problem" in victim's cell).  Furthermore, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer, 511 U.S. at 844.

The Court in Farmer identified three ways that prison officials might avoid Eighth Amendment liability.  Officials might show: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted."  511 U.S. at 844.  With respect to a failure to intervene at the time of an actual attack, an individual who was present at the time of an alleged assault can be held liable only if there was a reasonable opportunity to intervene.  See Hadley v. Gutierrez, 526 F.3d 1324, 1331 (11th Cir. 2008) (citing Priester v. City of Rivera Beach, FL, 208 F.3d 919, 924 (11th Cir. 2000)); see also Ensley v. Soper, 142 F.3d 1402, 1407–08 (11th Cir. 1998); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994).  A merely negligent failure to protect an inmate does not state a claim under § 1983.  Galloway, 352 F.3d at 1350; Brown, 894 F.2d at 1537; Davidson v. Cannon, 474 U.S. 344, 347–48 (1986).

    C.    Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their

---

[12] The Galloway court further noted that defendants are not required to "read imaginatively all derogatory and argumentative statements made between prisoners to determine whether substantial risks of serious harm exist."  352 F.3d at 1350.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine is intended to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

In Saucier v. Katz, the Supreme Court mandated a two-step process for lower courts to follow in resolving qualified immunity claims. 533 U.S. 194, 201 (2001). First, the court had to decide whether the facts that the plaintiff alleged showed a violation of a constitutional right. *Id.* Second, if the plaintiff satisfied the first step, the court had to determine whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (quoting Saucier, 533 U.S. at 201).

The Supreme Court revisited Saucier's mandatory two-step inquiry in Pearson. *Id.*, 555 U.S. at 232–36. The Court held that while the Saucier process is often appropriate, "it should no longer be regarded as mandatory." Rather, "[t]he judges of the district courts and the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

IV.   ANALYSIS

As previously noted, material facts are in dispute in this case. The parties dispute whether Plaintiff made Sgt. Smith aware of his fear of inmate Primous and his reason for fearing Primous, prior to Primous' placement in the cell with him. There also is a dispute as to whether Plaintiff verbally made Sgt. Smith aware of Primous' allegedly abusive behavior after his placement in the cell with Plaintiff, but before the attack. Resolving all factual disputes in Plaintiff's favor requires the court to conclude that Plaintiff told Sergeant Smith that Primous had previously threatened him on numerous occasions, that he feared Primous, and that he asked that Primous not be placed in the same cell. Similarly, the court must conclude that after the two men were in the same cell Plaintiff told Smith that Primous "slapped [Plaintiff] around," took Plaintiff's food trays, or was otherwise abusive toward Plaintiff before the event that culminated in their separation.

As discussed *supra*, the Court in Farmer identified three ways that prison officials might avoid Eighth Amendment liability. Officials might show: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844. In this case, Sgt. Smith's sole defense is that he did not know or have any reason to know of a problem between the two inmates. Because Plaintiff has presented sworn evidence to the contrary, Smith is not entitled to summary judgment based on his claim that he lacked knowledge of Plaintiff's complaints.

The court next considers Sgt. Smith's claim that he is entitled to qualified immunity (*see* doc. 42 at 12–14), a claim that, again, at the summary judgment stage must be resolved by accepting as true Plaintiff's version of the facts. *See* Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). And, under Plaintiff's version of the facts he has alleged a constitutional violation.[13] Additionally, the Eighth Amendment right of prisoners to be free of deliberate indifference by prison officials resulting in harm was clearly established at the time of the events in this case. *See* Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999–1000, 117 L. Ed. 2d 156 (1992). In light of this precedent, Sgt. Smith was on notice that failing to respond to a known threat to Plaintiff's safety was unlawful. Even if there is no specific precedent establishing that his conduct would violate Plaintiff's rights, "there need not be a case 'on all fours,' with materially identical facts, before we will allow suits against them." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004). Sgt. Smith, therefore, is not entitled to qualified immunity on Plaintiff's claim.

V.  CONCLUSION

Viewing the evidence in the light most favorable to the non-moving Plaintiff, genuine disputes of material fact exist which preclude summary judgment on Plaintiff's Eighth Amendment claim and which preclude summary judgment based on qualified immunity. Therefore, Defendant's motion for summary judgment should be denied.

---

[13] Smith acknowledges he would have acted on Plaintiff's complaints, had he known of them, and taken appropriate measures to prevent any violence (*see* doc. 42, exh. A at 1, Smith declaration).

Case No.: 3:09cv298/MCR/EMT

Accordingly it is **ORDERED**:

The clerk is directed to copy the declarations that are currently attached to document 53 as exhibits A through F, located at pages five (5) through thirteen (13) of the electronic docket, and attach them to Plaintiff's response to Defendant's motion for summary judgment, document 51, the pleading in which they are referenced.

And it is respectfully **RECOMMENDED**:

That Defendant's motion for summary judgment (doc. 42) be **DENIED**.

At Pensacola, Florida, this 25th day of January 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**